**In re PERFORMANCE MATERIALS, INC., Debtor.**

**Alan Morris, Individually; Buddy D. Ford, Esquire; and Buddy D. Ford, P.A., Plaintiffs,**

**v.**

**Joseph Puleo, Individually; Florida Pool Finishers, Inc.; Brett Wadsworth, Esquire; and Brett Wadsworth, P.A., Defendants.**

**Bankruptcy No. 01–03452–8W7.**

**Adversary No. 03–516.**

**United States Bankruptcy Court, M.D. Florida,**

Tampa Division.

May 17, 2004.

Buddy D. Ford, Tampa, FL, for Debtor/Plaintiffs.

Brett Wadsworth, Tampa, FL, for Defendants.

### FINAL DECLARATORY JUDGMENT ON PLAINTIFFS' VERIFIED MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

**THIS PROCEEDING** came on for hearing April 9, 2004, upon Plaintiffs' Motion For Summary Judgment (Doc. No. 37) and Defendants' Motion For Summary Judgment (Doc. No. 41). The issue before the Court is the interpretation of an order entered April 19, 2002, which authorized the sale of an asset in this bankruptcy case (Doc. No. 85 in the main bankruptcy case, Case No. 01–03452–8W7) ("Order"). The Court having considered the record, including the pleadings, and having heard argument of counsel, enters judgment on count I of the declaratory judgment action as follows:

### Summary Judgment Standard

Pursuant to Rule 7056(c) of Federal Rules of Bankruptcy Procedure and Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment

has the initial burden of establishing the nonexistence of any "genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court should grant summary judgment if it is clear that a trial is unnecessary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This said, summary judgment must be granted when the movant's burden has been satisfied. *Id.*, 477 U.S. at 251, 106 S.Ct. 2505. Once the movant presents sufficient competent evidence to entitle it to summary judgment, the non-movant cannot rest merely on averments and denials in its pleadings, but must set forth specific facts demonstrating genuine issues for trial. *In re Ralar Distributors, Inc.*, 4 F.3d 62, 67 (1st Cir.1993); *see also, E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979, 983–984 (11th Cir.1990) (citations omitted).

### Jurisdiction

■ Section 1334(b) of title 28, U.S.C., confers original, but not exclusive jurisdiction on all civil proceedings arising under title 11 or arising in or related to cases under title 11. The Order that is the subject of the declaratory judgment action entered in this case involved a sale pursuant to section 363 of the Bankruptcy Code (the Order also was entered pursuant to Rule 6004, which pertains to sales of property, and Rule 2002(c), which pertains to contents of a notice of sale of property). One of the core matters that falls within bankruptcy court jurisdiction is an order approving a sale of property of an estate. 28 U.S.C. § 157(b)(2)(N). It is clear that not only does the court have jurisdiction, but that the interpretation of orders of the court as they relate to the sale of property

of an estate are within the "core" jurisdiction of this court. *Petrie Retail, Inc.*, 304 F.3d 223, 228–230 (2d Cir.2002) (dispute based on rights established in the sale order issued by the bankruptcy court was a "core" matter). Accordingly, this Court finds that it has jurisdiction to interpret this Court's Order.

### Findings of Fact

By previous order (Doc. No. 27), the Court remanded part of this removed adversary proceeding and dismissed count II of the complaint. Thus, the only matter that remains pending before this Court is the declaratory judgment action—which seeks a declaration of certain rights that arose with respect to these parties as a consequence of a sale that occurred during the administration of the chapter 7 case.[1]

This case was originally filed as one under chapter 11 on March 5, 2001. The debtor, Performance Materials, Inc. ("Debtor"), was a corporation established by Alan Morris ("Morris")(a plaintiff in this adversary proceeding) for the purpose of acquiring the assets of a business owned by defendant Joseph Puleo ("Puleo"). A business dispute arose among Morris, the Debtor, and Puleo concerning Puleo's alleged obligations under a covenant not to compete.

The potential violation by Puleo of the covenant not to compete was listed as an asset in the bankruptcy schedules filed in the original chapter 11 case. *See* Schedule B, paragraph 20, which specifically described as an asset a "possible cause of action against former owner Charles Joe Puleo," under the category of property titled "other contingent and unliquidated claims of every nature." (The cause of

---

1. The Court incorporates its findings and conclusions as set forth in the transcript of the hearing conducted November 25, 2003, in this case, to the extent they have not been

clarified or supplemented by the Court in the hearing held on April 29, 2004, and this judgment.

action is hereinafter described as "Action".)

The Action was also referenced in the disclosure statement filed in the chapter 11 case (Doc. No. 34 in the main bankruptcy case, Case No. 01—03452–8W7). At page 6, the disclosure statement states that "the debtor will orderly liquidate its assets and will commence a lawsuit against Mr. Puleo and the new company, Florida Pool Finishers, Inc., to fund the plan."

Unfortunately, the chapter 11 case was unsuccessful and it was voluntarily converted to one under chapter 7. Thereafter, John Brook was appointed as chapter 7 trustee ("Trustee"). The Action, as set forth in the schedules, would be one of the assets to be administered by the Trustee.

In his administration of the chapter 7 estate in dealing with this particular asset, on January 3, 2002, the Trustee filed a report and notice of intention to sell property of the estate (Doc. No. 74 in the main bankruptcy case, Case No. 01–03452–8W7) (collectively, "Notice of Intention"), pursuant to Bankruptcy Code section 363 and Bankruptcy Rules 6004 and 2002(c)— which are the operative provisions governing sales of property of a bankruptcy estate.

The Notice of Intention describes the property being sold as the "potential lawsuit for violation of non-compete against Charles J. Puleo." [2] The original sale price was $250.00 and the potential buyer was Mr. Puleo. The sale, as is typical of bankruptcy sales, also provides that no warranties of any kind are provided and that the sale was subject to higher and better offers.[3]

Objections to the proposed sale were filed by two parties, Morris and CIT, the primary secured lender of the Debtor (Doc. Nos. 75 and 77). It appears that CIT held a floating Article 9 lien on the Debtor's contract rights and general intangibles and, therefore, asserted a claim. To the extent that this potential lawsuit constituted either of those, CIT did not want to waive its claim to credit bid.

Thus, the Court scheduled a hearing on the objections for March 21, 2002 ("Hearing"). At the Hearing, the Court sustained the objections and ordered an auction of the Action, which produced a higher bid by Puleo in the cash amount of $9,900.00. The Order authorizing the sale by the Trustee states, in relevant part, that: "[t]he Court approves the sale of the estate's tort and non-contract claims to Joseph Puleo for the sum of $9,900 (cash). . . ."

### Discussion

■ Puleo thereafter asserted in the state court action that the effect of the Order was to actually effect the conveyance of all of the bankruptcy estate's tort and non-contract claims against not only Puleo but also against other parties, specifically Morris, and Morris's attorney, Buddy Ford, and Mr. Ford's law firm, Buddy Ford, P.A. (collectively, "Ford"). It is this assertion that has caused Morris and Ford to invoke the jurisdiction of this Court seeking a declaration as to whether

---

2.  At the time the Notice of Intention was filed, Alan Morris and the Debtor had pending before the Circuit Court of the Thirteenth Judicial Circuit a suit against Charles Puleo, Florida Pool Finishers, Inc., and Performance Marcite, Inc.

3.  It may seem peculiar to be selling a lawsuit against a person to the person who is the defendant; however, that is a very common practice in bankruptcy court because the defendant is given an out from litigation and usually will offer something just for finality of having pending litigation resolved. The defendant then dismisses the lawsuit against the defendant. In a typical case, that ends the litigation.

Puleo's assertion is a valid one. For the reasons set forth below, the Court concludes that Puleo's position does not have merit.

■ To understand the Order, one needs to understand the underlying mechanics of the liquidation process of a bankruptcy estate. First, the Court is not the party selling the asset because it is not the representative of the estate under section 323 of the Bankruptcy Code. The actual party is the bankruptcy trustee, who has that function and is the party with power to sell assets of the bankruptcy estate. 11 U.S.C. §§ 323, 363. The trustee's right arises from section 363 of the Bankruptcy Code. Where a sale is not in the ordinary course of business, as was the situation here, court approval is necessary. Armed with court authority, the trustee then sells or liquidates the assets. In the ordinary case, the trustee obtains the authority (which can be broad) from the Court to conduct a private sale or an auction. The order granting such authority may not even be very specific and may only generally describe the assets for sale at an auction.

While the order granting the authority under which the trustee acts may be very broad, the Bankruptcy Rules have very specific requirements for conducting such sales. For example, Bankruptcy Rule 6004(f) requires that a notice be filed with the court that provides a statement of the specific property sold and the name of each purchaser. Additionally, Bankruptcy Rule 2002(c)(1) also requires that parties in interest receive notice of the proposed sale, and that notice must generally describe the property to be sold.

In this case, the Notice of Intention—provided pursuant to Rules 6004 and 2002—described the asset being sold as the "potential lawsuit for violation of non-compete against Charles J. Puleo." There

was no issue as to the adequacy of service to creditors nor was there any objection regarding the content of the Notice of Intention.

The operative document that effectuates the sale is the assignment. In this case, the assignment specifically transferred the estate's interest in the action for violation of the non-compete agreement against Charles J. Puleo, Performance Marcite, Inc., and Florida Pool Finishers, Inc. to Charles Puleo ("Assignment").

In light of the language in the Notice of Intention and the Assignment, it is clear that the Trustee only sold and assigned to Puleo the non-contract rights and claims that the estate had against Puleo, Performance Marcite, Inc., and Florida Pool Finishers, Inc. There is no ambiguity in this regard in the Assignment or the Notice of Intention. While the Order authorizing the sale is broader in its description than the Assignment and the Notice of Intention—the documents effectuating the sale—the Order itself does not operate to cause the sale to occur. The Order instead merely authorized the Trustee to conclude the sale to Puleo, consistent with the Notice of Intention and Assignment.

To reiterate, the only asset sold to Puleo was the Action, that is, the estate's claims against Charles Puleo, Performance Marcite, and/or Florida Pool Finishers and their respective assigns and beneficiaries. If there were other claims against other parties, they were not sold. Whether or not the Trustee had the right to sell any other asset under that Order is irrelevant because he failed to do so. The Order did not itself cause the sale to happen, it only authorized the sale by the Trustee.

Accordingly, the Court declares that the parties' rights under the Notice of Intention and Order are limited to the sale of the claims of the Debtor against Charles

Puleo, Performance Marcite, and/or Florida Pool Finishers and their respective assigns and beneficiaries only. The Court hereby enters judgment accordingly. The Court denies all other relief request by either party in the respective motions for summary judgment.